In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-389 CV


____________________



IN THE INTEREST OF D.K.M. II






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 90-10-03731-CV






 MEMORANDUM OPINION 


 This appeal arises from a contested child support order entered by the trial court
before Appellant Darrell McAlexander's death. In addition to other conditions set forth in
the order, the trial court found that its support order was an obligation of Darrell's estate and
that the obligation did not stop upon Darrell's death. Moreover, the trial court directed that
the monthly support payments extend beyond Darrell's child's eighteenth birthday. Procedural Background

 Darrell appealed from the trial court's order requiring that he pay child support for the
benefit of his son, D.M., in the amount of $700 per month. The court ordered that Darrell
make the payments to D.M.'s mother, Judy Gallo-Fountain, and that the payments continue
beyond D.M.'s eighteenth birthday. The trial court determined that the child "requires
substantial care and personal supervision because of a physical disability and will not be
capable of self support and the disability will continue to exist after the [child's] 18th
birthday." The trial court also ordered that Darrell pay $500 per month toward the cost of
the child's health care premium "for as long as child support is payable under the terms of
this order." Finally, as stated above, the court ordered that its support orders were an
obligation of Darrell's estate. D.M., Darrell's and Judy's child, suffers from muscular
dystrophy, a disability that Darrell acknowledged. 

 Darrell died after the time his attorney perfected this appeal. Consequently, Judy filed
a motion to dismiss the appeal as moot. In response, Darrell's attorney agreed that Darrell's
death renders moot the issues regarding possession and conservatorship rights over the child. 
However, Darrell's attorney continues to assert that the challenge to the order, requiring child
support payments for the life of the child, is not moot, as the support payments affect
Darrell's estate. 

 We denied Judy's motion to dismiss Darrell's appeal. Rule 7.1(a)(1) of the Texas
Rules of Appellate Procedure requires that we continue with the appeal as if all parties are
alive when a party dies after a court has rendered judgment but before the case has been
finally disposed of on appeal. Darrell's death does not render moot the issue surrounding
the requirement that he pay child support beyond D.M.'s eighteenth birthday because the
obligation affects Darrell's estate. Accordingly, we proceed to consider Darrell's challenge
to the legal and factual sufficiency of the evidence concerning whether D.M., after reaching
age eighteen, will be incapable of self-support. 

Evidence Regarding Self-Support

 D.M. was born in October 1987. By age six, D.M. began to show initial symptoms
of muscular dystrophy and was diagnosed with the disease in 1995. Muscular dystrophy is
"a hereditary disease characterized by progressive wasting of muscles." Webster's Third
New International Dictionary 1490 (Philip Gove ed., 2002). By 1998, the disease
confined D.M. to a wheelchair, and by 2000, D.M. began using an electric wheelchair. Two
years later, D.M. had limited use of his arms. 

 The trial court heard testimony from several witnesses addressing D.M.'s disease, 
including D.M.'s prognosis, psychological well-being and capabilities, and life expectancy. 
 Dr. Mary Lynn Chapieski, a neuropsychologist, evaluated D.M. in April, 2003. In her
opinion, D.M. was of average intelligence and his cognitive abilities fell within a normal
range. However, Dr. Chapieski noted the weakness of D.M.'s visual motor skills. Dr.
Chapieski also testified that the type of muscular dystrophy D.M. suffers usually causes death
in a person's early twenties. Furthermore, Dr. Chapieski stated that patients with this disease
are at risk of suffering from depression and anxiety. 

 Dr. Susan O'Neill, a board-certified pediatrician, testified that she diagnosed D.M.
with muscular dystrophy at age six or seven. She explained that because of a decrease in
muscle strength in D.M.'s lungs, he has a greater risk of incurring lung infections and
pneumonia. Dr. O'Neill also stated that during her last examination of D.M., in the summer
of 2003, he was severely overweight, had progressively lost muscle tone, and was becoming
increasingly depressed and despondent about his condition. Dr. O'Neill testified that
muscular dystrophy usually leads to the patient's death before the patient reaches thirty years
of age. Dr. O'Neill recommended a spinal surgery to correct D.M.'s spinal scoliosis. The
surgery involves placing a rod to support the back to make it stronger and straighter and
thereby, prevent the curvature of the spine from interfering with a patient's breathing. In Dr.
O'Neill's opinion, the back surgery could improve D.M.'s mobility and quality of life. 

 Dr. Gina Vendetti, a physician with the Baylor College of Medicine's muscular
dystrophy clinic, stated that D.M. had been a patient of hers for the past two and one-half
years. She testified that boys diagnosed with D.M.'s type of muscular dystrophy usually live
into their early twenties and possibly into their late twenties. However, Dr. Vendetti noted
that the median age of death in males suffering from muscular dystrophy is eighteen or
nineteen years of age. Dr. Vendetti continued by testifying that patients with muscular
dystrophy are more susceptible to lung infections, and that patients confined to wheelchairs
commonly have scoliosis, which affects the ability of the lungs to function. 

 Dr. Kit Harrison, a psychologist, testified that D.M. had average intelligence. Dr.
Harrison stated that given D.M.'s psychological issues, the fact that D.M. could live in a
home environment was "remarkable." Dr. Harrison explained that D.M.'s needs would
exceed the capacity of either parent to care for him in a home environment and that D.M.'s
future needs could require another care setting. Dr. Harrison predicted that during D.M.'s
treatment, he would require out-of-home care, outpatient care, partial hospital care, group
services, group home care, and assisted living. 

 Dr. Frank Giroux, a pediatric orthopedic surgeon, recommended that D.M. undergo
spinal surgery due to his progressive scoliosis. As scoliosis progresses, it aggravates a
muscular dystrophy patient's pulmonary function. Dr. Giroux explained that spinal surgery
would stabilize D.M.'s spine and allow him to maintain an upright posture in his wheelchair. 
Despite the recommended spinal surgery, Dr. Giroux testified that surgery would not increase
D.M.'s life expectancy, but, in his opinion, spinal surgery would improve D.M.'s quality of
life. The recovery period for the spinal surgery would be six months. Dr. Giroux noted that
a child with muscular dystrophy will typically live to age twenty or thirty. 

 Neither party presented evidence from any witness directly addressing D.M.'s future
ability to support himself. Additionally, the evidence showed that D.M.'s school provided
a student aid to help D.M. in removing books from his wheelchair and in taking notes in
class. Nevertheless, despite this assistance, D.M. has always had academic difficulties. 

Applicable Law

 The Texas legislature established criteria under which a parent's support obligation
can extend beyond a child's eighteenth birthday. Section 154.302 of the Texas Family Code
provides:


 (a) The court may order either or both parents to provide for the support of a
child for an indefinite period and may determine the rights and duties of the
parents if the court finds that:

 (1) the child, whether institutionalized or not, requires
substantial care and personal supervision because of a mental or
physical disability and will not be capable of self-support; and
(2) the disability exists, or the cause of the disability is known
to exist, on or before the 18th birthday of the child.

 (b) A court that orders support under this section shall designate a parent of the
child or another person having physical custody or guardianship of the child
under a court order to receive the support for the child. The court may
designate a child who is 18 years of age or older to receive the support
directly.


Tex. Fam. Code Ann. § 154.302 (Vernon 2002). 

 The trial court entered findings and conclusions relevant to the disputed issue. 
Specifically, the trial court found that: (1) D.M.'s disease is extreme and progressive, (2)
D.M. will continue to be wheelchair bound, and (3) the strength of D.M.'s muscles
supporting his spine will continue to deteriorate. The trial court additionally noted that, at
the time of trial, D.M. faced a very extensive surgery involving the placement of a steel rod
internally next to his backbone to prevent further collapse of his upper body causing
compression of his lungs and early death. Moreover, the trial court determined that the
disease will progress; "finally resulting in [D.M.'s] death within approximately ten years, at
best" and that "whereas there are medical and therapy measures which will improve the
quality of D.M.'s life, that there is unfortunately, no likelihood that D.M. will ever be self-supporting." Finally, the court concluded that there was no credible evidence that D.M.
would become self-supporting. Rather, he would be dependent on his parents for care and
support for the remainder of his life.

 When reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the findings, crediting favorable evidence if reasonable fact-finders
could, and disregarding contrary evidence unless reasonable fact-finders could not. City of
Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). Legally insufficient evidence or "no
evidence" of a vital fact exists when (a) the record is completely absent of evidence of a vital
fact; (b) rules of law or rules of evidence bar the court from giving weight to the only
evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital
fact. See Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). When
reviewing the evidence for factual sufficiency, we consider and weigh all the evidence,
setting aside a judgment only if the evidence, standing alone, is so weak as to be clearly
wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 D.M. has a serious and disabling disease as established in the record. Despite this, the
record also demonstrates that D.M. possesses normal cognitive abilities, attends high school
and expects to graduate, and has discussed attending college. Nevertheless, the evidence
shows that D.M. has required substantial care in the past. The record is absent any evidence
that his condition will improve to the point that he will no longer need the level of care
previously required. Additionally, the evidence supports that D.M.'s future health care
requirements will only increase.

 There is no dispute about the disease from which D.M. suffers, or that it is permanent
and progressive. Thus, the fact-finder may freely infer from evidence of a past and
permanent disability that the disability will continue in the future. Moreover, no evidence
was presented that D.M. had earned income in the past, or that he could perform work in an
occupation that would generate sufficient income to allow him to be self-supportive, given
his substantial needs. As such, whether D.M.'s permanent and progressive disease,
combined with his support requirements, renders him incapable of self-support requires a
judgment about future facts based upon historical facts. 

 On the record before it, the finder-of-fact was free to infer that D.M.'s medical
condition would interfere in a significant manner with his ability to obtain and retain
employment. The record contains no evidence that D.M. can presently or is likely in the
future to be able to support himself from earnings from a specific occupation. Under the
evidence in the record, we believe a fact-finder could reasonably conclude that D.M. cannot
support himself after he reaches age eighteen. We hold the evidence legally and factually
sufficient to support the trial court's finding that D.M. will be incapable of self-support. 

 We overrule all of Darrell's issues, and affirm the order of the trial court. 

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on February 2, 2006

Opinion Delivered August 24, 2006

Before McKeithen, C.J., Gaultney and Horton, JJ.